IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANIBAL MELENDEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 10-223-SLR |
| | ) |
| PERRY PHELPS, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

Anibal Melendez.  Pro se petitioner.

Elizabeth R. McFarlan.  Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

March  18  , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Anibal Melendez ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In late August and early September 2005, petitioner and Charles Jones were incarcerated in the James T. Vaughn Correctional Center, where they were both housed in Building 21. *Melendez v. State*, 947 A.2d 1122 (Table), 2008 WL 187950, at *1 (Del. Jan. 23, 2008). Petitioner and Jones did not get along and, eventually, a physical altercation occurred. Jones punched petitioner, knocking out one of his teeth. Jones believed that he had gotten the better of petitioner but, nevertheless, petitioner continued to threaten Jones. As a result, Jones tried to avoid petitioner. *Id*.

On September 12, 2005, Jones was sitting in a prison common area playing cards with a friend. *Id*. Petitioner approached Jones and asked if the cards belonged to Jones. Jones replied affirmatively. Petitioner walked away toward his cell, and then he headed toward the telephone. Jones turned back to his card game. When Jones next turned to verify petitioner's location, petitioner stabbed him in the eye. Jones jumped up, and petitioner went into the shower. Correctional officers, searching the shower area shortly after the stabbing, discovered a red toothbrush sharpened to a point in the shower drain. *Id*.

Jones was subsequently transported to the Wills Eye Hospital in Philadelphia for surgery. *Id.* During a second surgery, doctors gave Jones a cornea transplant, reattached his retina and placed silicone oil in Jones' right eye. At the time of trial in February 2007, Jones could not see out of his eye and he was receiving ongoing treatment. *Id.*

In September 2005, petitioner was arrested and subsequently charged with assault in a detention facility, first degree assault, possession of a deadly weapon during the commission of a felony, and possession of a deadly weapon by a person prohibited. *Id.* In February 2006, petitioner's counsel moved to have petitioner undergo a psychiatric/psychological evaluation to determine his mental status at the time of the crime. The Superior Court granted the motion on February 23, 2006. In June 2006, in response to a defense motion, the Superior Court ordered that a new psychiatric/psychological evaluation be performed, and that the evaluation was to include interviews omitted in the earlier evaluation. *Id.* at *2. At final case review on February 12, 2007, petitioner was granted permission to move for another psychiatric/psychological evaluation. That motion was denied on February 21, and the case immediately proceeded to trial. The next day, a Superior Court jury found petitioner guilty on all counts of the indictment. Petitioner was sentenced to a total of forty-three years in prison, suspended after forty-one years, for decreasing levels of supervision. *See Melendez v. State*, 986 A.2d 1164 (Table), 2010 WL 376875, at *1 (Del. Jan. 5, 2005), *reh'g. den.* (Del. Jan. 27, 2010). Petitioner appealed, and the Delaware Supreme Court affirmed petitioner's convictions and sentences. *Id.*

In December 2009, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), alleging ineffective assistance. *Id*. Petitioner's trial counsel filed an affidavit in response to petitioner's allegations of ineffective assistance, and the State filed its answer. Thereafter, the Superior Court Commissioner issued a recommendation that the Rule 61 motion be denied. Petitioner filed a response. On April 20, 2009, the Superior Court adopted the Commissioner's Corrected Report and Recommendation, and denied petitioner's Rule 61 motion. The Delaware Supreme Court affirmed that ruling on post-conviction appeal. *Id*.

Petitioner timely filed a § 2254 application in this court. (D.I. 2) The State filed an answer (D.I. 13), arguing that two allegations in petitioner's sole claim for relief should be denied for failing to warrant relief under § 2254(d), and that the other allegation should be denied as procedurally barred.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner

satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the

4

errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see*

*also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents one claim alleging three instances of ineffective assistance of counsel: (1) defense counsel failed to give a timely pre-trial notice of intent to present a mental health defense; (2) defense counsel failed to call an expert to testify

6

---

in support of a mental health defense; and (3) defense counsel failed to timely file a motion for an additional psychiatric evaluation and failed to pursue that motion once filed.

The State alleges, and petitioner concedes (D.I. 16 at 2), that petitioner procedurally defaulted allegation three of petitioner's ineffective assistance of counsel claim. Therefore, the court will deny petitioner's third allegation as procedurally barred from habeas review.

As for allegations one and two, petitioner exhausted state remedies for these arguments and the Delaware Supreme Court denied them as meritless on post-conviction appeal. Accordingly, petitioner will only be entitled to habeas relief if the Delaware Supreme Court's denial of allegations one and two was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to petitioner's ineffective assistance of counsel claims. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine if Delaware Supreme Court's denial of claim one as meritless involved a reasonable application of *Strickland*. The court will briefly summarize the relevant facts before proceeding to this analysis.

To reiterate, prior to trial, defense counsel filed a motion to have petitioner undergo a psychiatric/psychological evaluation. The trial court granted that motion, and Dr. Kathryn Sheneman at the Delaware Psychiatric Center evaluated petitioner. Dr. Sheneman's initial report found insufficient clinical evidence to suggest that petitioner would qualify for a guilty but mentally ill ("GBMI") defense or an insanity defense. However, after reviewing petitioner's treatment records during his incarceration, Dr. Sheneman added an addendum to her initial report opining that petitioner met the legal

8

standard for GBMI. Dr. Sheneman, however, specifically noted that she had been unable to interview persons who would have interacted with petitioner at the time of the offense. Dr. Sheneman recommended a referral to Dr. Donohue for an opinion regarding petitioner's mental state at the time of the offense. The trial court followed that recommendation and Dr. Dononhue re-examined petitioner. Dr. Donohue reviewed relevant medical and prison records, as well as audio taped interviews conducted by a Department of Correction investigator with the victim and an inmate witness. Dr. Donohue concluded that petitioner did not meet the Delaware legal definition of GBMI. The Delaware Supreme Court viewed "Dr. Donohue's report [as] complet[ing] Dr. Sheneman's analysis." *Melendez*, 2008 WL 187950, at *3.

After receiving Dr. Donohue's December 2006 report, petitioner asked his trial counsel to move for a third mental health evaluation. On February 16, 2007, five days before trial, defense counsel filed a motion asking the trial court to order another mental health evaluation. On the first day of trial, the trial court held a motion-related court proceeding, which focused on petitioner's competency. *Melendez*, 2008 WL 187950, at *2. Neither petitioner nor defense counsel reiterated the request for an additional evaluation of petitioner's mental state at the time of the offense or indicated that petitioner intended to pursue a GBMI defense at trial. The trial court formally found petitioner competent to stand trial but did not formally rule on petitioner's request for an additional evaluation of his mental state at the time of the offense. *Id.*

In his first allegation, petitioner contends that counsel should have given a timely pre-trial notice of a mental health defense as required by Delaware Superior Court Criminal Rule12.2 (b). The Delaware Supreme Court denied this argument as meritless

9

because petitioner's final psychiatric report concluded that petitioner did not meet the criteria for a GBMI defense.

It is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless objections, defenses, or motions. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). In this proceeding, petitioner has not provided the court with any reason to find that defense counsel's reliance on the final psychiatric report's conclusion that there was no basis for a GBMI defense constituted deficient performance. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this allegation.

Petitioner also contends that counsel performed ineffectively by failing to call Dr. Sheneman as an expert in support of a mental health defense. The Delaware Supreme Court denied this allegation as meritless, because Dr. Sheneman had moved out of state and was not able to testify. The Delaware Supreme Court also noted that Dr. Sheneman had not completed her report and had, in fact, stated that the trial court should contact Dr. Donohue for any further opinions regarding petitioner's mental state at the time of the offense.

Considering Dr. Shenemen's physical location outside the state of Delaware, her concession regarding the unreliability of her conclusion about petitioner's mental state, and her suggestion that the Delaware courts contact Dr. Donohue for any further opinions, counsel's decision not to call Dr. Shenemen as a witness did not fall below an objective standard of reasonableness. Thus, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this allegation.

Accordingly, the court will deny petitioner's sole claim in its entirety.

10

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.